UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ROBERT JACOBS,<br>    Petitioner, | Case No. 1:21-cv-461 |
| vs. | Black, J.<br>Litkovitz, M.J. |
| WARDEN, SOUTHEASTERN<br>CORRECTIONAL INSTITUTION,<br>    Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody at the Southeastern Correctional Institution, through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition and respondent's return of writ, to which petitioner has replied. (Doc. 1, 8, 9).

For the reasons stated below, the petition should be denied.

## I. PROCEDURAL HISTORY

### State Trial Proceedings

On January 18, 2017, the Hamilton County, Ohio grand jury returned a seven-count indictment charging petitioner with one count of aggravated murder, two counts of murder, one count of attempted murder, two counts of felonious assault, and one count of having weapons while under disability. (Doc. 7, Ex. 1). On February 13, 2019, after several continuances, petitioner, with the assistance of counsel, signed and executed a jury waiver and guilty plea form. (Doc. 7, Ex. 4, 5). Pursuant to a negotiated plea agreement, petitioner entered a guilty plea to a lesser-included involuntary manslaughter offense with a firearm specification, attempted murder with a firearm specification, and two counts of felonious assault. (Doc. 7, Ex. 5, 6). In exchange for his guilty plea the State agreed to dismiss the remaining charges and specifications.

On February 13, 2019, petitioner was sentenced to a total aggregate prison sentence of twenty-six years in the Ohio Department of Corrections. (*Id.* at PageID 40).

### Direct Appeal

On February 22, 2019, petitioner, through new counsel, filed a notice of appeal to the Ohio Court of Appeals. (Doc. 7, Ex. 7). Petitioner raised the following single assignment of error:

> The trial court denied Mr. Jacobs due process of law by accepting his guilty plea when that plea was made involuntarily due to the trial court abusing the court's discretion by denying Jacobs' request to continue his trial date.

(Doc. 7, Ex. 8). On March 11, 2020, the Ohio appeals court overruled petitioner's assignment of error and affirmed the judgment of the trial court. (Doc. 7, Ex. 10).

### Ohio Supreme Court

On April 16, 2020, petitioner, through appellate counsel, appealed to the Ohio Supreme Court. (Doc. 7, Ex. 11). Petitioner raised the following single proposition of law in his memorandum in support of jurisdiction:

> The trial court denied Mr. Jacobs due process of law by accepting his guilty plea when that plea was made involuntarily due to the trial court, which pressured Jacobs into pleading guilty, and abused the court's discretion by denying Jacobs' request to continue his trial date.

(Doc. 7, Ex. 12). On July 7, 2020, the Ohio Supreme Court decline to accept jurisdiction of the appeal. (Doc. 7, Ex. 13).

### Federal Habeas Corpus

Petitioner, through new counsel, filed the instant federal habeas corpus action on July 11, 2021. (Doc. 1). Petitioner raises the following single ground for relief in the petition:

> **GROUND ONE:** Mr. Jacobs's guilty plea was coerced and therefore in violation of the United States Constitution.

2

> <u>Supporting facts</u>: On the date his case was to proceed to trial Mr. Jacobs requested a continuance to hire a new attorney. Mr. Jacobs stated specifically that he wanted a new attorney because he was not satisfied with his attorney. Instead of continuing the case to allow Mr. Jacobs to pursue acquiring a new attorney, Mr. Jacobs was given a one day continuance to decide if he wanted to take a plea or proceed to trial with the attorney he no longer wished to represent him. Ultimately, Mr. Jacobs guilty ple[d] instead of proceeding to trial.

(Doc. 1 at PageID 5). Respondent has filed a return of writ in opposition to the petition, to which petitioner has replied. (Doc. 8, 9). According to respondent, petitioner's ground for relief is without merit.

**II.    THE PETITION SHOULD BE DENIED**

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies

3

that principle to the facts of the prisoner's case.'" *Id.* at 599–600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* [563] U.S. [170], 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* [562] U.S. [86], 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). In other words, to obtain federal habeas relief under that

4

provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, 565 U.S. 34, 38–40 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 565 U.S. at 38, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at 182, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision*.'" *Id.*, at 182, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

5

In this case, petitioner argues that his guilty plea was involuntary. The Fourteenth Amendment's Due Process Clause guarantees that a guilty plea must be made voluntarily and intelligently with sufficient awareness of the relevant circumstances and likely consequences. *Boykin v. Alabama,* 395 U.S. 238, 242 (1968); *see also Brady v. U.S.,* 397 U.S. 742, 748 (1970); *King v. Dutton,* 17 F.3d 151, 153 (6th Cir. 1994). "[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady,* 312 U.S. 329, 334 (1941)). In *Brady,* the Supreme Court adopted the following standard for determining the voluntariness of a guilty plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady,* 397 U.S. at 755 (quoting *Shelton v. United States,* 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds,* 356 U.S. 26 (1958)). The voluntariness of a guilty plea must be assessed in light of all the relevant circumstances surrounding the plea. *Brady,* 397 U.S. at 749; *King,* 17 F.3d at 153 (and cases cited therein).

For a guilty plea to be deemed voluntarily entered with a "sufficient awareness of the relevant circumstances and likely consequences," the defendant must be correctly informed of the maximum sentence that could be imposed. *King,* 17 F.3d at 154; *Hart v. Marion Corr. Instit.,* 927 F.2d 256, 259 (6th Cir. 1991). Although the defendant must be apprised of such "direct consequences" of the plea, the court is under no constitutional obligation to inform the defendant of all the possible "collateral consequences" of the plea. *King,* 17 F.3d at 153; *see also El-Nobani v. United States,* 287 F.3d 417, 421 (6th Cir. 2002). "When a defendant

6

subsequently brings a federal habeas petition challenging his plea, the state generally satisfies its burden by producing a transcript of the state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). As the Supreme Court noted in *Blackledge v. Allison,* 431 U.S. 63 (1977):

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the guilty plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 73-74 (internal citations omitted).

In the instant case, petitioner challenged the voluntariness of his guilty plea on direct appeal to the Ohio Court of Appeals. (*See* Doc. 7, Ex. 8). In overruling the assignment of error, the appeals court found that petitioner's guilty plea was made knowingly, intelligently, and voluntarily:

> {¶1} In early 2019, defendant-appellant Robert Jacobs pleaded guilty to charges of involuntary manslaughter and attempted murder as part of a plea deal with the state. Mr. Jacobs was indicted two years earlier on various charges stemming from a shooting he perpetrated at a local shelter, leaving one person dead and another seriously wounded. As part of his plea deal, Mr. Jacobs received a 26-year prison sentence, and in exchange the state dismissed other charges, including a charge of aggravated murder. Mr. Jacobs now appeals, presenting a single assignment of error challenging the voluntariness of his pleas. He posits that the trial court's denial of a continuance request resulted in coercion, rendering his pleas involuntary and therefore constitutionally void. Based on our review of the record, however, we disagree and affirm his convictions.
>
> {¶2} A defendant's guilty plea "is constitutionally valid only if it is entered knowingly, voluntarily, and intelligently." *State v. Foster*, 2018-Ohio-4006, 121 N.E.3d 76, ¶ 13 (1st Dist.), citing *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). A plea without those hallmarks is constitutionally unenforceable under both the United States Constitution and the Ohio Constitution. *See Engle* at 527.

7

{¶3} Generally, when we evaluate whether a guilty plea passes constitutional muster, we consider the trial court's compliance with the requirements of Crim.R. 11. *See State v. Reinhardt*, 1st Dist. Hamilton No. C-130560, 2014-Ohio-4071, ¶ 22 (the defendant's plea was not coerced by trial counsel where the record reflected that the trial court engaged in a Crim.R. 11 colloquy and that defendant entered the plea "by her own free will[.]"); *State v. Simpson*, 1st Dist. Hamilton No. C-940998, 1995 WL 610693, *1 (Oct. 18, 1995) ("[T]he record demonstrates that the trial court substantially complied with Crim.R. 11, ensuring that the plea was voluntary."). This is the appropriate jumping-off point because Crim.R. 11(C)(2) requires the judge to personally inform the defendant of the constitutional rights he or she is waiving by pleading guilty to the offense. *See State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990) ("Ohio Crim.R. 11(C) was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review.").

{¶4} But in this appeal, Mr. Jacobs does not actually challenge the trial court's adherence to the requirements of Crim.R. 11. Instead, he contends that circumstances surrounding entering his pleas, primarily the denial of his continuance request, amounted to coercion, rendering his guilty pleas involuntary and thus void. *See State v. White,* 2017-Ohio-287, 81 N.E.3d 958, ¶ 8 (8th Dist.) ("[A] guilty plea, if induced by promises or threats that deprive it of the character of a voluntary act, is void."); *State v. Panezich*, 7th Dist. Mahoning No. 17 MA 0087, 2018-Ohio-2812, ¶ 17 ("A guilty plea, if coerced * * * renders the plea involuntary.").

{¶5} At the plea hearing, when asked if he had sufficient time to consider his decision, Mr. Jacobs responded "not really." This prompted the trial court to offer Mr. Jacobs another day to mull things over. Seemingly uninterested in this option, Mr. Jacobs explained: "If it was up to me, I'd start from the beginning all over again. Get a new lawyer, get everything, if it was up to me, but I got kind of bombarded. * * * I kind of got bombarded into this. So here I am about ready to do twenty-six years." The court assured Mr. Jacobs that he could still proceed to trial, offering to halt the plea hearing immediately. But Mr. Jacobs rebuffed this overture: "Your honor, I'm just telling you how I feel. All I'm doing is telling you how I feel inside. * * * If it were up to me I would rather get a continuance."

{¶6} A pair of recent decisions from our sister districts help convince us that Mr. Jacob's challenge is unavailing. On similar facts, the Second District in *State v. Danon,* 2018-Ohio-419, 105 N.E.3d 596 (2d Dist.), addressed a defendant's assertion that his guilty plea was involuntary "because [the defendant] felt pressured to enter a plea that day" and "emphasize[d] that the trial court had denied a continuance of the trial date, * * * reference[ing] statements that he made at the plea hearing to support his claim[.]" *Id.* at ¶ 21. In rejecting this claim, the court noted, despite defendant's protestation that "he 'was not very confident with his decision,'" the trial court did not pressure the defendant to enter a plea. *Id.* at ¶ 24. Instead, the trial court offered the defendant additional time to consider the plea,

8

the defendant confirmed he had sufficient time to consider the matter, and the plea hearing otherwise comported with Crim.R. 11. *Id.*

{¶7} Likewise, in *State v. Harris*, 12th Dist. Butler No. CA2017-11-161, 2018-Ohio-3222, the defendant insisted that his plea was involuntary because "he wanted a continuance * * * and he felt he had no other choice but to accept the plea." *Id.* at ¶ 10. Noting that "[t]he record [did] contain some hesitancy from [the defendant] regarding his decision to plead guilty," the court ultimately concluded based on the surrounding circumstances that his sentiment that he had to accept the plea was "a mere acknowledgement that he was choosing to avoid the death penalty even if the resulting sentence was life without parole." *Id.* at ¶ 14, 16. Emphasizing that the trial court offered the defendant additional time to confer with his attorneys, the record otherwise reflected that he understood his plea, and it comported with Crim.R. 11, the court concluded that the plea was "knowingly, voluntarily, and intelligently made." *Id.* at ¶ 10, 18.

{¶8} And as in *Harris,* viewing Mr. Jacobs's statements to the trial court within the context of the entire plea hearing, his expressions that he felt "bombarded," that he wished to rekindle the entire process anew, and that he wanted a continuance more reflect his dissatisfaction with choosing between a 26-year sentence or gambling on heftier sanctions at trial, rather than coercion. *See Harris* at ¶ 16. And just as in both *Dannon* and *Harris*, the trial court here offered Mr. Jacobs additional time to consider the pleas and informed him that trial remained an option. Declining those options, Mr. Jacobs ultimately affirmed to the trial court that he wished to enter the guilty pleas.

{¶9} Defendants often face difficult, if not gut-wrenching, decisions regarding whether to accept a plea deal. The challenge of reaching that decision, however, does not automatically render it the product of coercion. Here, the trial court did everything right to ensure that Mr. Jacobs was not coerced—it offered Mr. Jacobs more time, emphasized that he could proceed to trial, and assured him that he could stop the change of plea hearing.

{¶10} We also note that, in his appellate brief, Mr. Jacobs references statements he made at the plea hearing regarding an "incident" that transpired between him and his trial counsel as contributing to the involuntariness of his pleas. At the plea hearing, when asked by the court if he was satisfied with his attorney, Mr. Jacobs responded "I want to keep the incident to myself," but affirmed his overall satisfaction. The record reflects, however, that Mr. Jacobs never elaborated further on the "incident" leaving us only to speculate as to the nature of the alleged "incident." Even if we wished to go down that road, our speculation would run into a brick wall in light of Mr. Jacobs's acknowledgment of his satisfaction with counsel. Absent some indicia that Mr. Jacobs's counsel threatened him, provided improper inducements for him to plead guilty, or engaged in some other inappropriate action, we cannot determine how the "incident" rose to the level of coercion. *See Reinhardt,* 1st Dist. Hamilton No. C-130560, 2014-Ohio-4071, at ¶

9

> 13, 16 (trial counsel's recommendation that a defendant plead guilty did not amount to coercion rendering the plea involuntary or ineffective assistance of counsel).
>
> {¶11} While we appreciate that Mr. Jacobs may have preferred another continuance to avoid entering his guilty pleas, he could not delay his day of reckoning in perpetuity. The denial of his requested continuance does not equate to coercion on the record before us. *See Harris,* 12th Dist. Butler No. CA2017-11-161, 2018-Ohio-3222, at ¶ 15 (though defendant was unhappy that the court denied his motions, the record reflected that defendant understood "the rights he was waiving, as well as the consequences of his plea."). Furthermore, review of the record reveals that the trial court otherwise complied with Crim.R. 11 at the plea hearing and that Mr. Jacobs entered the guilty pleas knowingly, intelligently, and voluntarily. *See State v. Wiesenborn,* 2019-Ohio-4487, 135 N.E.3d 812, ¶ 55 (2d Dist.), quoting *State v. Ogletree,* 2d Dist. Montgomery No. 21995, 2008-Ohio-772, ¶ 7 ("'Compliance with the procedures mandated by Crim.R. 11(C) when a defendant enters a plea of guilty or no contest to a felony charge, absent any indicia of coercion, creates a presumption that the plea was knowing, intelligent, and voluntary.'").
>
> {¶12} Based on the foregoing analysis, we accordingly overrule Mr. Jacobs's sole assignment of error and affirm the judgment of the trial court.

(Doc. 7, Ex. 10 at PageID 68–72).

Upon review of the entire record in this case, the undersigned finds that petitioner has failed to demonstrate that the state courts' adjudication of his claims was contrary to or an unreasonable application of Supreme Court precedent. As reasonably determined by the Ohio Court of Appeals, the trial court record demonstrates that petitioner's guilty plea was voluntary, intelligent, and entered after being fully informed of his constitutional rights.

During petitioner's change of plea hearing, the trial court reviewed the details of the agreed upon sentence with the prosecution and defense. (*See* Doc. 7-1, Trans. at PageID 87–90). The trial court reviewed with petitioner the nature of the charges, the effect and potential consequences of a guilty plea, and the rights petitioner would waive by entering into the plea agreement. With regard to the nature of the charges, the prosecution read the facts underlying the charges against petitioner (*id.* at PageID 91–92), before the trial court reviewed with

10

petitioner the charges brought against him (*id.* at PageID 93–94) and the maximum penalties associated with each charge (*id.* at PageID 97–98). The trial court questioned petitioner as to his ability to enter a plea to the charges. In response to the court's questions, petitioner indicated that he had some college education and was not under the influence of drugs, medication, or alcohol which would impact his ability to understand the proceedings. (*Id.* at PageID 94–95). Petitioner affirmed that he had reviewed the charges with his attorney and that no one had threatened him or promised him anything other than the agreed sentence in connection with his guilty plea. (*Id.* at PageID 95–96). Petitioner indicated that he understood the charges, the potential sentences, and the terms of the agreed sentence. (*Id.* at PageID 96–105).

The trial court also reviewed with petitioner the constitutional rights that he would waive by entering his guilty plea. (*Id.* at PageID 105–108). Petitioner indicated that he understood that he had a right to a speedy trial, to appointed counsel at no cost if he could not afford an attorney, to a jury or bench trial, to call and compel witnesses to testify on his behalf, and to cross examine adverse witnesses; that he could not be forced to testify against himself; and that the state was required to prove that he was guilty beyond a reasonable doubt. (*Id.* at PageID 106–108). Petitioner indicated that he understand he was waiving these rights by virtue of entering a guilty plea, did not have any questions, and that he was voluntarily waiving his rights. (*Id.* at 108).

Petitioner indicated that he reviewed the guilty plea form with his attorney, understood the form, and signed it willingly. (*Id.* at PageID 108–109). When the trial court asked petitioner's attorney about the voluntariness of petitioner's plea, counsel stated "Mr. Jacobs and I have spent an inordinate amount of time discussing this plea. We've talked at great length over the last few weeks. Based on our conversations here this morning, it is my opinion that he is doing this knowingly, intelligently, and voluntarily." (*Id.* at PageID 109). Petitioner indicated

11

that he thought his attorney represented him well and stated that he did not have any questions for his counsel or the trial court. (*Id.* at PageID 110).

As discussed by the Ohio Court of Appeals, during the plea colloquy, petitioner did refer to an undisclosed "incident" with his attorney and indicated that did not feel that he had enough time to make his decision. (*Id.* at PageID 110). Although petitioner claims these issues rendered his subsequent guilty plea involuntary or coerced, petitioner subsequently stated that his attorney represented him well, declined the trial court's offer of a one-day continuance, and elected to proceed with his guilty plea:

> THE COURT: And, Mr. Jacobs, are you satisfied with your attorney?
>
> THE DEFENDANT: Hmmm, I want to keep the incident to myself.
>
> THE COURT: I'm sorry?
>
> THE DEFENDANT: I rather keep the incident to myself.
>
> THE COURT: Do you think your attorney has represented you well?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Thank you. Do you have any questions for him or me at this point?
>
> THE DEFENDANT: No.
>
> THE COURT: Have you had enough time to make your decision?
>
> THE DEFENDANT: Not really.
>
> THE COURT: Do you want to come back tomorrow?
>
> THE DEFENDANT: If it was up to me, I'd start from the beginning all over again. Get a new lawyer, get everything, if it was up to me, but I got kind of bombarded.
>
> THE COURT: Well, you can't go back –
>
> THE DEFENDANT: I kind of got bombarded into this. So here I am about ready to do twenty-six years.

THE COURT: What was that word you said? I didn't hear it.

THE DEFENDANT: Excuse me, sir? I didn't hear you.

THE COURT: You said some word.

MR. McCLOSKEY: He said "bombarded."

THE DEFENDANT: Bombarded.

MS. SCOTT: Bombarded.

THE COURT: Bombarded with what?

THE DEFENDANT: With the incident. If it was up to me, I would –

THE COURT: Well, if you want to have a trial instead of doing a guilty plea, we'll have a trial starting today.

THE DEFENDANT: Nah, it's too late now. We –

THE COURT: No, it's not too late. If you want to stop right now, this very second –

THE DEFENDANT: Your Honor, I don't want -- Your Honor, I'm just telling you how I feel. All I'm doing is telling you how I feel inside.

THE COURT: I understand.

MR. McCLOSKEY: If it was up to me, I would rather get a continuance. Like I been in court the other day –

THE COURT: We're not going to have a continuance. We're either going to have a guilty plea or we're going to have a trial start today.

THE DEFENDANT: No. We -- we can keep going.

THE COURT: Do you want to keep going with this plea?

THE DEFENDANT: Yes.

THE COURT: Okay. So understanding your rights, do you still wish to voluntarily enter a plea of guilty to the charge we discussed?

THE DEFENDANT: Yes.

13

(*Id.* at PageID 110–13).

With respect to the "incident" mentioned by petitioner, at no point in this case or during the state court proceedings has petitioner specified the incident or explained how his attorney influenced the voluntariness of his guilty plea.[1] In his traverse, petitioner claims that he "explained his desire to hire a new attorney stemmed from his lack of receipt of discovery and information from the attorney in question" (Doc. 9 at PageID 153); however, review of the state court record does not reveal any such explanation either during the change of plea hearing or on direct appeal. On direct appeal and on appeal to the Ohio Supreme Court, counsel for petitioner argued that, based on the undisclosed incident, "it is reasonably inferred that he had some problem with his trial attorney and deserved new counsel." (Doc. 7, Ex. 8 at PageID 52, Ex. 12 at PageID 81). However, as observed by the Ohio appeals court, petitioner subsequently affirmed that trial counsel represented him well, that he did not have any questions for counsel or the trial court, and that he wished to move forward with the guilty plea. (*See* Doc. 7, Ex. 10 at PageID 69-72).

Furthermore, while counsel for petitioner claims that petitioner sought a continuance to

---

[1] Petitioner does not raise the ineffective assistance of counsel as a ground for relief in the petition and, in any event, it appears any such claim has been procedurally defaulted and waived based on petitioner's failure to fairly present the claims to the Ohio courts. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275–76 (1971). In a recently filed application to reopen his direct appeal, petitioner does argue that his appellate counsel was ineffective for failing to argue ineffective assistance of trial counsel based on plaintiff's claim that he "was taking certain psychotropic medication just prior to trial and that neither Trial Counsel, Nor Appellate Counsel investigated or prepared a defense of any kind." However, the undersigned notes that during the plea hearing trial counsel did inform the trial court that "[petitioner] does take a series of medications while he is in the Justice Center. However, in my conversations with him this morning and throughout this trial, I do not believe that the medications affect his ability to understand what he's doing or what is happening here." (Doc. 7-1, Trans. at PageID 95). The Ohio Court of Appeals denied petitioner's delayed application to reopen, finding that petitioner filed the motion more than two years after the court journalized its judgment in his appeal and offered no excuse for the delay. Viewed at https://www.courtclerk.org/ under Case No. C-190154. This Court may take judicial notice of court records that are available online to members of the public. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

obtain new counsel and that he "clearly and unequivocally" expressed his desire to hire new counsel (*see* Doc. 9 at PageID 153), the record is not so clear. Review of the online docket records reveals that the trial court continued the case on multiple occasions during the two years between the indictment a guilty plea. On February 7, 2019, five days before the change of plea hearing, the trial court denied petitioner's request for an additional continuance, noting that petitioner failed to set forth any basis for an additional continuance.[2] With respect to the change of plea hearing, the Ohio Court of Appeals reasonably understood petitioner's comments—that "if it was up to me, I'd start from the beginning all over again. Get a new lawyer, get everything, if it was up to me, but I got kind of bombarded"—as reflecting "his dissatisfaction with choosing between a 26-year sentence or gambling on heftier sanctions at trial," as opposed to an unequivocal request for new counsel.[3] (*See* Doc. 7, Ex. 10 at PageID 71).

---

[2] As included in petitioner's appellate brief (Doc. 7, Ex. 8 at PageID 50), the plea and trial setting hearing involved the following exchange:

> MR. McCLOSKEY: Judge, I think I wanted to make clear one thing: there had been some discussions between Mr. Jacobs and I about a possible continuance. And I told him, at this point I don't believe the court is inclined to grant that. And it sounds like that is, in fact, the case. The court will be ready on Tuesday, the State is ready, and we will proceed with trial should he not want to take this offer (agreed plea and sentence of 26 years offered). T.p. 29, 30.
>
> THE COURT: Well, the Supreme Court of Ohio tells me on all cases that we're supposed to get them to trial. We're not supposed to just continue for the sake of continuance. Tuesday we're - on my docket, we're ready to do the case.
>
> . . .
>
> THE DEFENDANT: I'd like to have a continuance.
>
> THE COURT: You're not going to have continuance. I just said we're not going to have a continuance. We're not going to have a continuance. There is no reason for a continuance. I just told you. First of all, the Supreme Court tells me just don't do a continuance just because somebody asks for a continuance. There has to be a good reason. This case has been hanging around for a long time. There is no good reason for a continuance. I have the time to do it next week, and there's no reason to not have a trial. We're ready to have a trial. So if you decide not to take this offer that you just heard about, then there will be a trial in five days. So you've got five days to either take it or go to trial . . . T.p. 29, 30, 31.

[3] Regarding petitioner's statement that he felt "bombarded," trial counsel for petitioner commented as follows:

15

The fact that the trial court denied petitioner and trial counsel an additional continuance did not render his subsequent plea involuntary. In response to petitioner's suggestion that he did not have sufficient time to consider the plea offer, petitioner was offered an additional day to consider whether or not to enter the guilty plea but declined. (*See id.* at PageID 110-11). Petitioner was also reminded that he was free to deny the plea offer and proceed to trial. Although petitioner may have preferred a continuance, the Ohio Court of Appeals reasonably concluded that the trial court's denial of a continuance did not render the subsequent guilty plea involuntary. *See United States v. Schmid*, No. 21-1402, 2022 WL 1769137, at *2 (10th Cir. 2022) (holding that the denial of a continuance defined the options available to the defendant—to accept the plea or proceed to trail—but did not render the choice between those options involuntary); *United States v. Aguirra*, 693 F. App'x 516, 520 (9th Cir. 2017) (finding that "failure to grant a continuance . . . was neither a threat nor a promise and did not undermine the voluntariness of [the defendant]'s guilty plea"). Petitioner remained free to accept the plea, take an additional day to consider it, or reject it an proceed to trial. As observed by the Ohio appeals court, this decision was undoubtedly a difficult one for petitioner. Nevertheless, upon review of the entire record, the undersigned concludes that petitioner has failed to demonstrate that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of Supreme Court precedent.

Accordingly, because petitioner's sole ground for relief is without merit, petitioner is not

---

> Judge, as I said before, this plea is the result of some lengthy negotiations. When it began, I think both sides were really far apart. And I know that the State worked very, very had to get this number and this plea to us, and we appreciate those efforts.
>
> We did try some last-minute changes, but they were very, very clear about it. So I think when Mr. Jacobs uses the word "bombarded," I'm not sure that's necessarily an accurate statement.

(Doc. 7-1, Trans. at PageID 62-63).

16

entitled to federal habeas relief.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 2/9/2023

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ROBERT JACOBS,  
    Petitioner,

vs.

WARDEN, SOUTHEASTERN  
CORRECTIONAL INSTITUTION,  
    Respondent.

Case No. 1:21-cv-461

Black, J.  
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).